# Jackson v. Pennsylvania Contracting Company, Appellant.

*Negligence—Master and servant—Defective machinery—Pleading.*

1. In an action by an employee against his employer to recover damages for personal injuries, where the statement of claim avers broadly that the accident happened by reason of the use of a defective engine, the defendant cannot complain, after a trial on the merits and a verdict against him, that the statement was not more precise in its averments. If he desired fuller information he should have applied for a more particular statement of claim.

2. In such a case the question of the defendant's negligence should be submitted to the jury where the evidence for the plaintiff although contradicted by that of the defendant, and in itself somewhat contradictory, tends to show that the engine was defective as alleged, and that the defect had existed for such a period of time before the injury, that the defendant was visited with at least constructive notice of its defect.

Argued April 30, 1913. Appeal, No. 136, April T., 1913, by defendant, from judgment of C. P. Allegheny, Co., April T., 1909, No. 1,173, on verdict for plaintiff in case of George A. Jackson v. Pennsylvania Con-

tracting Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before MACFARLANE, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $300. Defendant appealed.

*Error assigned* was in submitting the case to the jury.

*John A. Metz*, with him *W. Clyde Grubbs*, for appellant.—The Procedure Act of May 25, 1887, P. L. 271, requires an accurate and complete statement in trespass: Clark v. Lindsay, 7 Pa. Superior Ct. 43; Hale v. Hale, 32 Pa. Superior Ct. 37; McLean v. Schoenhut, 225 Pa. 100.

The jury could not infer, it could only guess, that the injury to plaintiff was caused by a defective engine: Hayes v. Michigan Cent. R. R. Co., 111 U. S. 228 (4 Sup. Ct. Repr. 369); Patton v. Ry. Co., 179 U. S. 658 (21 Sup. Ct. Repr. 275); Melchert v. Brewing Co., 140 Pa. 448.

It was a physical impossibility that the accident could happen in the manner alleged: Byersdorf v. Cream City Sash & Door Co., 109 Wis. 456.

*Don Rose*, with him *Roy Rose*, for appellee.

OPINION BY HEAD, J., October 13, 1913:

The plaintiff was injured on the second day of his employment in the service of the defendant company. At the time of his injury he was engaged in assisting to pile what in the testimony are called wickets. These were composed of large heavy pieces of oaken timber bolted or riveted together. Each weighed about three tons. After a wicket had been constructed on the surface of the yard

it became necessary, in order to save working space, that the completed ones be arranged in piles, one on top of the other. To do this a hoisting engine and derrick were used. When the completed wicket was made fast to the chains or cables of the derrick it was hoisted in the air and guided to the spot where it was to be deposited. When the plaintiff, on the second day of his employment, was directed to assist in this work, a new pile of wickets was to be started. The first one was moved to its proper location and deposited on the ground in safety. The plaintiff testifies that in guiding it to its destined location a fellow workman, on the opposite side of the wicket, handled a rope attached either to the wicket or the chains of the derrick by the aid of which he could give it necessary direction while suspended in the air. The plaintiff was located on the opposite side of the wicket, and by the use or the aid of a heavy iron bar helped to keep it over the desired location until it could be lowered to the proper place. He says that in dealing with the first wicket, after the proper location had been obtained, word was given to the engineer and the wicket was then slowly lowered under the control of the plaintiff's fellow workman and himself to its desired location on the ground. When the second wicket came to be moved, its destination being exactly on the top of the first one, a like procedure was followed until it was suspended immediately above the spot to which it was to be lowered. At that moment plaintiff had his bar under it on his side and the upper end of that long bar was resting on his shoulder. He testifies that instead of this wicket being slowly lowered to its place as the first one had been, it was suddenly permitted to drop. This unexpected action wrested the bar from his grasp and the upper end of it, forced from his shoulder down along the side of his body, crushed his foot. He further testifies that during the time he was compelled to remain there, before he was removed, he saw a number of similar operations and that when the engine worked properly the wicket was lowered to its place as the first one had been, but that

owing to a defect in the engine it would occasionally escape from the control of the engineer and the wicket would drop as it did in the instance in which he was injured.

With the alleged contradictions in the plaintiff's testimony as to the precise manner in which his injury was caused we have no concern. There is evidence which, if believed by the jury, would warrant the finding that the engine was defective as alleged by him and that such defect had existed for such a period of time before his injury that the defendant company was visited with at least constructive notice of it. The learned counsel for the appellant first complains that under the pleadings it was not competent for the plaintiff to introduce evidence that his injury resulted from a defect in the engine. The answer to such complaint must of course be found in the pleadings themselves. To quote them at length here would serve no good purpose. It is sufficient to say that although the plaintiff's statement was broadly drawn by the pleader and covered a variety of alleged negligent acts on the part of the defendant, it certainly did give notice that the use of a defective engine was alleged to be one of the negligent acts which brought about the injurious result to the plaintiff. If it was not as definite in this respect as the defendant desired, an application for a more particular statement would have furnished the required information. If the verdict and judgment are otherwise right, this court ought not at this time to interfere on that ground.

It is further alleged that the conclusion of the jury that the plaintiff's injury resulted from the defective engine was but a mere guess, and not a reasonable inference from established facts. The testimony clearly tended to prove that the plaintiff's injury resulted from the sudden and unexpected dropping of the wicket. Further that if the engine was defective in the manner testified to, the result would be, when that defect became operative, just the sudden dropping of whatever was held by the derrick.

There is testimony to show that when the revolving drum became wedged and had to be knocked loose by the use of a bar or piece of timber, the spring intended for that purpose was too weak to hold the weight and a sudden drop of the load followed. It would be no proper function of ours to declare, under such circumstances, that the verdict of the jury had no sufficient support in the evidence.

The question of the plaintiff's contributory negligence was very carefully submitted by the learned trial judge to the jury. Whilst there was some conflict in the testimony as to whether or not he was taking reasonable care of himself, there is no warrant for the conclusion that the learned trial judge could have determined, as a matter of law, that the plaintiff was guilty of contributory negligence.

Finally we are asked to say that it was a physical impossibility that the accident could have happened in the manner alleged by the plaintiff. Courts undoubtedly can and must take judicial notice of such universally accepted scientific facts as may fairly be said to be a part of the common knowledge of men of average intelligence and education. But it would be pressing that principle far beyond its rational or recognized limits were we to undertake to say in a case like the present one that the injury could not have happened in the manner described by the man who was hurt. It is true there is some confusion in his testimony as to whether, just before the drop of the second wicket, the lower end of his bar was resting on the ground or on the first wicket. But it is not on such matters that an appellate court should reverse a judgment entered on the verdict of a jury. We are satisfied the case was well tried by the learned trial court and that the record exhibits no reversible error. The assignments of error are therefore overruled.

Judgment affirmed.